**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **REGINALD SHEPPARD** | * | |
| | * | |
| **Plaintiff** | * | **CIVIL ACTION NO.** |
| | * | |
| | * | **JUDGE** |
| | * | |
| | * | |
| **Versus** | * | |
| | * | |
| **DEPUY ORTHOPAEDICS, INC. and** | * | |
| **JOHNSON & JOHNSON** | * | **MAGISTRATE** |
| **Defendants** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**COMPLAINT FOR DAMAGES WITH JURY DEMAND**</u>

NOW INTO COURT, through undersigned counsel, comes the plaintiff, Reginald Sheppard, a person of the full age of majority and residents of the State of Louisiana within the Eastern District of Louisiana, who file this Complaint and allege the following, on information and belief:

1.

The Court has subject-matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. §1332.

2.

Made Defendants herein are:

1. **DEPUY ORTHOPAEDICS, INC.** ("Depuy"), an Indiana corporation with its principal place of business in Warsaw, Indiana, and, at all times pertinent, authorized to do and doing business in the State of Louisiana and within the Eastern District;

2. **JOHNSON & JOHNSON**, a New Jersey corporation with its principal place of business in New Bruswick, New Jersey, and, at all times pertinent, authorized to do and doing business in the State of Louisiana and within the Eastern District.

3.

That the defendants are liable jointly, severally and *in solido* unto the plaintiffs

4.

That in January 2012, Plaintiff, Reginald Sheppard, underwent surgery for implantation of a Pinnacle ("the device") hip implant at Slidell Memorial Hospital in the Eastern District of Louisiana. The device was manufactured by the Defendants.

5.

That the Plaintiff, Reginald Sheppard, purchased the device in St. Tammany Parish from Slidell Memorial Hospital, which had purchased it from the Defendants.

6.

That the Defendants sold the device in the United States to be used for total hip replacement surgeries. In particular, the Defendants sold the device to Slidell Memorial Hospital at a substantial profit. The Defendants were sellers and/or distributors in the chain of custody.

7.

That the device was developed, designed, manufactured, marketed, tested, distributed and/or sold by the defendants.

8.

That the  Defendants aggressively marketed the  device as  having  many advantages over  other hip  replacement devices and  that the  Defendants engaged  in an  intensive  campaign  to  promote  the  use   of the   Pinnacle hips  by  orthopedic surgeons.  Depuy  subsequently engaged  in instruction and  training in the  use  and implementation of this  device.

9.

The  Depuy device implanted in Plaintiff, Reginald Sheppard,  was  defective in design, manufacture, and construction and, with regards  to  warnings, labeling and warranties, both express and implied.  As  a consequence of these defects, the  Depuy device is defective *per se.*  The defendants are  strictly liable  for all damages caused by their   defective device pursuant to  the   Louisiana  Products  Liability Act and Louisiana Civil Code  Articles 2315 *et seq.*

10.

Contrary to defendants' marketing campaigns, for more  than two  years the Defendants have  known that Pinnacle hips  were failing  early  and  therefore causing harm  in a high  number of patients that received the  devices.  Specifically, for more than two   years, the   Federal Drug  Administration (FDA) has   been receiving complaints that the  devices failed  early  in some patients due  to component loosening, component mal-alignment, dislocation, and  fracture because of the  design and/or  construction  or  composition  of the   devices.   Additionally, reports  were received that the  implant's "ball"  and  "socket" that made up  the  artificial hip  joint, which were both   metal bearings,  generated  metal debris over  time from  wear and

tear which can enter the bloodstream and spread throughout the surrounding bone and tissue causing severe inflammation and damage.

11.

Upon information and belief, since 2008 the FDA has received numerous complaints involving patients in the United States that received the devices, with a substantial number of these patients requiring complicated, expensive and painful revision surgeries with the attendant risks of complication and a prolonged recovery time.

12.

Notwithstanding the complaints about the Depuy products received by the FDA, the Defendants neither terminated the sales of the Pinnacle Hips nor warned the public. To the contrary, the Defendant has aggressively marketed the devices as safe and effective hip replacement devices even though they were on notice of the high number of FDA complaints.

13.

That the Defendants, in order to obtain a share of profits, sales and/or commissions, claimed and/or suggested to physicians, or directed or encouraged others to claim or suggest, that the devices would last longer than others which had well-established life expectancies of 12-15 years. As a result of these claims and suggestions, physicians were induced to believe the devices were safer and more reliable in the face of known evidence to the contrary. Physicians like the plaintiff was induced to recommend Defendants' metal-on-metal devices to hip replacement candidates. The Depuy metal-on-metal devices have been shown to have a higher

failure rate  than that of its competitors and  to pose a risk  of metal ions

contamination, even  after  explants.

14.

That the  Defendants  ignored information from  physicians showing  problems

with  metal debris and   metal ions,  including  elevated  cobalt  chromium  levels  in

patients.

15.

That the  Defendants' acts and  omissions vitiated the  learned intermediary

relationship between  the  Plaintiff  and  his  surgeon and  deprived the Plaintiff  of the

right to make  an informed decision as the  purchaser of the  device and  an  informed

consent as  a patient.

16.

That Plaintiff's prolonged exposure to  sustained high  levels of metal ions

poses a future health risk  and  requires medical evaluations and  future monitoring.

17.

Prior  to the  sale  and  implementation of his  Depuy device, the  Plaintiff,  Reginald

Sheppard,  was unaware that the device was defective.

18.

That as  a  result of  the  defective  device, Plaintiff, Reginald  Sheppard,  had  a

revision            surgery            to            remove            the            device.

## FIRST CAUSE OF ACTION—NEGLIGENCE

19.

That the Defendants had a duty to exercise reasonable care in the development, design, manufacture, testing, marketing, distribution and sale of the Pinnacle Hips.

20.

That the Defendants failed to exercise reasonable care under the circumstances and therefore breached this duty by:

a) Failing to properly and thoroughly test the device before releasing it to market;

b) Failing to properly and thoroughly analyze the data resulting from the pre-market testing of the device;

c) Failing to conduct sufficient post-market testing and surveillance of the devices;

d) Designing, manufacturing, marketing, advertising, distributing and selling the devices to consumers, including the Plaintiff, without adequate warning of the significant and dangerous risks and without proper instructions to avoid the harm which could foreseeably occur as a result;

e) Failing to exercise due care when advertising and promoting the devices; and

f) Negligently continuing to manufacture, market, advertise and distribute the devices after the Defendants knew or should have known of its adverse effects.

21.

That Plaintiff, Reginald Sheppard, was injured as a direct and proximate result of the Defendants actions, omissions and misrepresentations. The Plaintiff has incurred and will continue to incur expenses as a result of this device.

22.

That the  Defendants knew or should have  known that the  device would fail early  in patients  giving rise  to pain  and  suffering, debilitation and  the  need for additional  surgical  procedures  to  remove  and   replace the   defective device. Additionally, the  Defendants knew of should have  known that revision procedures are  more  painful and  a greater hardship on the patient.

23.

That despite  knowledge by the  Defendants that the  devices would fail early, they   negligently  continued  to  market  the   devices as safe and   effective hip replacement systems and  to sell and  distribute these devices

## SECOND CAUSE OF ACTION PURSUANT  TO
## THE LOUISIANA PRODUCTS LIABILITY ACT—FAILURE TO WARN

24.

That the  Defendants researched, developed, designed, tested,  manufactured, inspected,  labeled,  distributed,  marketed,  promoted, sold and   otherwise released into  the   stream of commerce the   device and,   in  the   course of same, directly advertised or marketed the   product to the   FDA, health care  professionals, and consumers, or persons responsible for consumers, and  therefore had  a duty  to warn of the  risks associated with the use  of the  device.

25.

That the  Defendants failed  to adequately warn health care  professionals and the  public, including the Plaintiff  and  her  physician, of the  true  risks  of the  device, including that the  hip  could  loosen and  separate from the  hip  socket or become

\

malpositioned, causing severe pain and injury, and requiring further treatment, including revision surgery and/or replacement.

26.

That the Defendants failed to provide timely and reasonable instructions and training concerning safe and effective use of the device to either the Plaintiff or her physician.

27.

That the device, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce was defective due to inadequate warnings to health care professionals and the consumer public, including the Plaintiff, and continued to aggressively promote the device.

28.

That the Defendants failed to perform or otherwise facilitate adequate testing, failed to reveal or concealed testing and research data, or selectively and misleadingly revealed or analyzed testing and research data.

29.

That as a direct result of Defendants' conduct, Plaintiff, Reginald Sheppard, has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to the plaintiff in an amount to be determined at trial.

## THIRD CAUSE OF ACTION PURSUANT
## TO THE LOUISIANA PRODUCTS LIABILITY ACT—DEFECTIVE  DESIGN

30.

That the  Defendants are  the  researcher, developer, manufacturer, distributor, marketer, promoter, supplier and   seller   of the device, which  is  defective and unreasonably dangerous.

31.

That the   device  is  defective  in  its  design  or  formulation  in  that  it  is  not reasonably fit, suitable or safe for its intended  purpose and/or its foreseeable risks exceed the  benefits associated with its design.  The device is defective in its design in  that  it  lacks efficacy,  poses a greater  likelihood of injury  and   is more  dangerous than other available devices indicated for the  same conditions and  uses.

32.

That if the   design defects were  known  at  the   time   of  manufacture,  a reasonable  consumer would  have  concluded that  the  utility  of the  device did  not outweigh its risks.

33.

That the  defective condition of the  device rendered it  unreasonably dangerous and/or not  reasonably safe,  and  the  device was in this  defective condition at the  time it left the  hands of the  Defendants.  The  device was expected to and  did  reach the Plaintiff and  her  physician without substantial change in the  condition in  which it was  designed,  manufactured,  labeled,  sold,   distributed,  marketed,  promoted, supplied     and       otherwise    released    into     the      stream   of  commerce.

34.

That the Plaintiff was unaware of the significant hazards and defects in the device. The device was unreasonably dangerous and/or not reasonably safe in that it was more dangerous than would be reasonably contemplated by the ordinary patient or physician. During the period that the Plaintiff used the device, it was being utilized in a manner that was intended by the Defendants. At the time the Plaintiff had the device implanted, it was represented to be safe and free from latent defects.

35.

That the defendants are strictly liable unto the Plaintiff for designing, manufacturing and placing into the stream of commerce the device, which was unreasonably dangerous for its intended uses because of its design defects.

36.

That the Defendants knew or should have known of the danger associated with the use of the device, as well as the defective nature of the device, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the device so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the device.

37.

That as a direct result of Defendants' conduct, Plaintiff, Reginald Sheppard, has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to the plaintiff in an amount to be determined                                    at                                    trial.

## FIFTH CAUSE OF ACTION PURSUANT TO
## THE LOUISIANA PRODUCTS LIABILITY ACT—BREACH OF EXPRESS
## WARRANTY

38.

That the Defendants advertised, labeled, marketed and promoted its product, the Pinnacle Hip, representing the quality to health care professionals, the FDA, Plaintiff, and the public in such a way as to induce the purchase or use, thereby making an express warranty that the Pinnacle Hip would conform to the representations. More specifically, Defendants represented that the Pinnacle Hip was safe and effective for use by individuals such as the Plaintiff or that it was safe and effective to treat the Plaintiff's condition.

39.

That the representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods conformed to the affirmations of fact or promise.

40.

That the device did not conform to the representations made by the Defendants in that it was not safe and effective, was not safe and effective for use by individuals such as the Plaintiff, and/or was not safe and effective to treat individuals such as the Plaintiff.

41.

That at all times relevant, the Plaintiff used the device for the purpose and in the manner intended by the Defendants.

42.

That the Plaintiff and her physician, by the use of reasonable care, would not have discovered the breached warranty and realized its danger.

43.

That the breach of warranty was a substantial factor in bringing about the Plaintiff's injuries.

44.

That as a direct result of Defendants' conduct, Plaintiff, Reginald Sheppard, has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to the plaintiff in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION PURSUANT TO
## THE LOUISIANA PRODUCTS LIABILITY ACT—BREACH OF IMPLIED WARRANTY

45.

That the device was not reasonably fit for its intended use and did not meet the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manner. Nor was the device minimally safe for its intended purpose.

46.

That at all relevant times, the Plaintiff used the device for the purpose and in the manner intended by the Defendants.

47

That the Plaintiff and her physician, by the use of reasonable care, would not have       discovered the       breached   warranty   and       realized   its   danger.

48

That the breach of warranty was a substantial factor in bringing about the Plaintiff's injuries.

49

That as a direct result of Defendants' conduct, Plaintiff, Reginald Sheppard, has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to the Plaintiff in an amount to be determined at trial.

## **DEMAND FOR JURY TRIAL.**

The plaintiff demands a jury trial on all issues triable.

WHEREFORE, Plaintiff, Reginald Sheppard, prays that upon final determination of these causes of action, they receive judgments against Defendants Depuy Orthopaedics, Inc. and Johnson & Johnson as follows:

a.         Actual damages as alleged, jointly and/or severally against Defendants including but not limited to:

1)      Reasonable and necessary past medical expenses;

2)      Reasonable and necessary future medical expenses;

3)      Past pain and suffering;

4)      Future pain and suffering;

5)      Past mental anguish;

6)      Future mental anguish;

7)      Past physical disfigurement;

8)      Past physical impairment;

9)     Future physical impairment;

10)    Pre and post-judgment interest;

11)    Loss of enjoyment of life;

12)    Loss of consortium;

13)    Such other applicable damages as the Court deems appropriate.

b.     Court costs and reasonable attorney's fees necessary for preparation of the case for trial;

c.     All other damages appropriate in the premises.

Respectfully Submitted,

JOHN D. SILEO, L.L.C.

BY: */s/ John D. Sileo*
JOHN D. SILEO, # 17797
CASEY W. MOLL #39525
320 North Carrollton Avenue #101
New Orleans, LA 70119
Telephone: (504) 486-4343

**PLEASE SERVE:**
**DEPUY ORTHOPAEDICS, INC.**
C T CORPORATION SYSTEM
5615 CORPORATE BLVD., STE.
400B BATON ROUGE, LA 70808

**JOHNSON  &  JOHNSON**
Through its Agent for Service:
**Via Long Arm**
One Johnson & Johnson Plaza
NewBrunswick,NJ08933